IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| EDWARD HIMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 315-053 |
| | ) |
| MR. ZANDERS, Warden; | ) |
| MRS. SANDERS, Deputy Warden, Care | ) |
| and Treatment; and | ) |
| MR. M. ROGERS, Law Librarian, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Dodge State Prison ("DSP") in Chester, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I. BACKGROUND

Plaintiff names the following Defendants: (1) Mr. Zanders, Warden at DSP; (2) Mrs. Sanders, Deputy Warden of Care and Treatment at DSP; and (3) Mr. M. Rogers, the law librarian at DSP. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

One day after Plaintiff arrived at DSP on April 9, 2015, rain water "started coming through the wall and flooded [his] room." (Id. at 5.) Plaintiff and his roommate had to keep cleaning up the water, and in response to Plaintiff's grievance 194688 about the water problem, Defendant Zanders told Plaintiff he was responsible for keeping his room clean. (Id. at 3, 4.) Plaintiff maintains he cannot "kill mold behind a heater bolted to the wall." (Id. at 5.) Plaintiff had not received a response to his appeal of grievance 194688, filed on May 26, 2015, at the time he signed his complaint. (Id. at 4, 5.)

Plaintiff also alleges difficulty in obtaining legal research material from Defendant Rogers in the form of Standard Operating Procedures ("SOPs") regarding vegan diets and medical care. (Id. at 5.) Plaintiff maintains Defendants Zanders and Sanders ordered that Defendant Rogers not show the SOPs to Plaintiff. (Id.) Plaintiff asserts that failing to provide him with the requested SOPs not only violates the procedures outlined in the SOPs, but also his right of access to the courts. (Id.) Plaintiff states he wrote two letters to Inmate Affairs about his problems obtaining the SOPs and provided copies of those letters to all three Defendants. (Id.) Inmate Affairs did not respond to his letters, and he had not received a response to his grievance about getting copies of the SOPs at the time he signed his complaint. (Id. at 3, 5.)

Plaintiff seeks an award of nominal and punitive damages for living in a cell where water comes through the walls and for the refusal to follow the proper procedure for allowing inmates to examine SOPs. (Id. at 6.) He also wants a "federal agency to oversee" repairs to the walls and the operation of the law library. (Id.)

## II. DISCUSSION

### A. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at

3

557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff Fails to State a Valid § 1983 Claim.

#### 1. Plaintiff Fails to State a Claim For Allegedly Failing to Follow SOP Procedures.

Plaintiff alleges that Defendants have violated SOP procedures by denying him access to the vegan diet and medical SOPs. (Doc. no. 1, p. 5.) Plaintiff offers no details about any harm or injury arising from the alleged restrictions on viewing SOPs.

A valid § 1983 claim is stated when a violation of the Constitution or federal law occurs, not when there is violation of an administrative regulation. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327, 330-31 (1986). An allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (noting that many prison regulations "are primarily designed to guide correctional officers in the administration of a prison" and that "such regulations are not designed to confer rights on inmates"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (district court properly dismissed prisoner's claim concerning prison officials' alleged failure to follow prison procedures with respect to grievances); Taylor v. White, CV 11-0377-CG-N, 2012 WL 404588, at *5 (S.D. Ala. Jan. 10,

4

2012) ("A claim based on a prison official's failure to follow prison regulations or state regulations, without more, simply does not state a claim for deprivation of a constitutional right."), *adopted by* 2012 WL 403849 (S.D. Ala. Feb. 7, 2012). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted based on Defendants' alleged violation of procedures set forth in any SOP.

### 2. Plaintiff Fails to State a Claim for Denial of Access to the Courts.

To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 349-55 (1996). There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Wilson, 163 F.3d at 1290-91. Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996)).

Here, Plaintiff has provided no details about any legal proceedings, let alone proceedings of a nonfrivolous nature that have been hampered, denied, or dismissed. In fact, he offers no explanation for wanting to examine any SOP. As Plaintiff fails to specify any actual injury to a nonfrivolous legal action caused by any Defendant, he fails to state a viable claim for denial of his right to access the courts.

5

### 3. Plaintiff Did Not Exhaust His Administrative Remedies on Any of His Claims.

Even if Plaintiff had stated a valid claim for relief related to accessing SOPs, his complaint, to include the claim related to water in his cell, is subject to dismissal because of his failure to exhaust administrative remedies.

#### a. The Exhaustion Requirement of the Prison Litigation Reform Act ("PLRA").

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps"

in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### b.  The Prison Grievance Procedure.

The administrative grievance procedure applicable in this case is governed by the Department of Corrections' SOP IIB05-0001. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

7

should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### c. Plaintiff's Failure to Exhaust.

Here, Plaintiff states that he filed grievance 194688 related to water in his cell on April 13, 2015, received a response from the warden, and filed an appeal on May 26, 2015. (Doc. no. 1, p. 3.) However, he concedes that at the time he signed his complaint, less than one week after submitting his appeal, he had not received a response. (Id. at 4.) Indeed, the applicable SOP on grievance appeals allows 100 calendar days after receipt of the grievance appeal to deliver a decision to the inmate. SOP IIB05-0001 § VI(E)(7).

As to the claims related to allegedly improper restrictions on accessing legal research material in the form of SOPs, Plaintiff states he filed a grievance on June 1, 2015, the very day he signed his complaint. (Doc. no. 1, pp. 3, 6.) He concedes he had not received a response to his grievance regarding access to legal research, let alone filed an appeal to which the time has expired for a ruling. The warden has forty days to respond to the original grievance, and then the Office of the Commissioner has 100 calendar days to rule on any appeal. SOP IIB05-0001 §§ VI(D)(7) & (E)(7).

In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. Therefore his complaint fails to state a claim upon which relief can be granted for this reason as well. See Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of August, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA